Smith, C. J.
This action was brought by the plaintiff, against his mother, Josephine Dumont, and her husband, John J. Dumont, to set aside, for reasons stated in the petition, two deeds made by him to her — one dated Aug. 20,1874, for the one-half of certain real estate then owned by him, and the other, dated May 23, 1876, for the other one-half thereof. The court of common pleas on the hearing of the case, (no defense thereto having been interposed by the Dumonts), set aside the deeds, and that part of the decree made, not having, been appealed from by them, stands in full force as between such parties.
But the petition sought other relief, and against another defendant. It further alleged that the Dumonts and Thomas Newell, Jr., had confederated together to have Newell advance to the Dumonts alone, a large sum of money, and to secure the payment of which, the Dumonts and the plaintiff himself (who .then held the title to the one-half of said real estate, his mother having a deed from him for the other half) were to execute to Newell, a deed in fee-simple for the land, and he was to execute to the two Dumonts and the plaintiff, a lease therefor, for five years, at a rental of $1,000 per year; and *230 Newell was also to execute a writing, showing that the conveyance was in fact only a mortgage, to secure the loan. But that it was further agreed between them, that the plaintiff should not receive any part of the money, or have any control of the property under the lease, of which last arrangement plaintiff was ignorant. It also alleged, that on May 11, 1876, the Dumonts and" plaintiff did, on the consideration of $10,000 expressed therein, execute a fee-simple deed to Newell for the land. That Newell executed to them a lease therefor, as agreed on, and a paper showing that the deed was only a security for the money thus advanced. That plaintiff, in pursuance of the secret agreement, received no part of the money so paid, and was never allowed any control of the land under the lease; and that the deed from him to Newell was procured by these fraudulent practices, and the prayer was, that as to him it be declared void on this account.
By his answer and cross-petition, Newell denies any fraud or secret contract, and sets up, that by virtue of the agreements and deed referred to, he has a valid mortgage on the premises to secure the $10,000 advanced by him, with the interest thereon, all of which he alleges to be due, and asks a foreclosure of the same.
On the issue thus raised between Hayes and Newell, the cause proceeded to trial in the court of common pleas. And so far as that issue is concerned, we may say, that on the trial in this court, we see no evidence which would justify us in finding that the allegations of the petition were true, so far as they set up any secret agreement on the part of Newell.
But during the trial of the case^in the common pleas, as appears by the testimony offered in this court, it was discovered by the trial judge, that in the agreement signed by all of the parties, declaring that the deed was only a mortgage, and containing other stipulations, that the name of John J. Dumont had been interlined in several places, so that as it stood, it contained a recital of the lease as having been made to the plaintiff and both Dumonts, and making Dumont a joint contractor with his wife and the plaintiff. And thereupon the plaintiff alleging that he was for the first time advised of this, obtained leave to file an amendment to his petition, which *231 was done, and in which he alleged that the lease in question was made by Newell to Mrs. Dumont and himself, and not to him, Mrs. Dumont and her husband, as he had set forth in his original petition. And that the paper referred to, by which it was agreed that the deed was only a mortgage, was executed by him and his mother in Indianapolis May 11, 1876, and when executed by them, John J. Dumont was not mentioned in it, except as having joined in the deed; and that as executed by them, it was only a contract between them and Newell; that in this condition it was taken by Dumont to Cincinnati, and there, without the consent of the plaintiff, was altered by Newell and Dumont, by inserting the name of John J. Dumont therein as one of the contracting parties, and then that Newell signed it on May 13, 1876; and he says this was a fraudulent alteration, and by reason thereof Newell paid Dumont the money on the contract without plaintiff’s consent, and as a co-contractor; and that this alteration was not discovered by him till the time of the trial, March 16, 1886. He therefore claims that on this account, the whole contract as to him is void, and he asks the deed to be set aside.
All of these allegations were denied by Newell, and a trial was had in the common pleas, and an appeal taken from the judgment there to this court, and trial had.
Without giving a full statement of the reasons for our conclusions, we are of the opinion that this state of fact is clearly shown by the evidence :
1. That early in May, 1876, Mrs. Dumont and her son, the plaintiff, each held the legal title to one undivided half of the premises in question, but that they were heavily incumbered by liens thereon, amounting to $6,000 or $7,000, part of which was being pressed for payment. That the owners were very desirous of making a loan, whereby they could pay off these liens and make some improvements upon the property, and had the law firm of Messrs. Jordan, Jordan & Williams, who had been their attorneys for many years, to make inquiry to see if such a loan could be made by them. Their said attorneys informed them that Mr. Newell would make the loan, and Dumont was sent from Indianapolis to Cincinnati to see him, and make the arrangement.
*232 2. It was there agreed that Newell would make the loan, and it was to be secured as follows: The Dumonts and Hayes were to execute to Newell a deed in fee-simple for the land, and he was to execute to Mrs. Dumont and Hayes a lease therefor for five years at an annual rental of $1,000. And to show the true nature of the transaction, an agreement was to be signed, showing 'that the deed was a mortgage, and providing as to the payment of the $10,000, and that $2,500 of the loan was, to be put into improvements on the land. The papers .were accordingly so drawn by Mr. I. M. Jordan, acting as attorney for the owners of the land, and were all sent by the hands of Dumont to Indianapolis there to.be executed by Hayes and Mrs. Dumont, which was done May 1!, 1876. There is no evidence to show that Newell saw any of these papers until their return from Indianapolis, or knew the exact character of them. They were brought back by Dumont, who was fully authorized to receive the cash payment of $3,000.
3. After the return of the papers to Cincinnati, we find that N. E. Jordan, one of the attorneys of plaintiff, by mistake, and in entire good faith, inserted the name of John J. Dumont in the agreement (except in two places, where it is evidently in the handwriting of another person). The effect of these alterations was to make John J. Dumont one of the lessees, and to become responsible, with the other lesseees, for the - rent. Mr. Jordan is of the opinion that he made these interlineations before the papers went to Indianapolis — and though there are circumstances disclosed 'which favor this idea, we think the weight of the evidence is, that it was done after they came back to Cincinnati, and with the evident purpose of correcting what he supposed to be a mistake; and we doubt not with the concurrence of Dumont. Indeed, there is much reason to^ suppose that in two places where these interlinations occur, they are in the handwriting of Dumont. Mr. Williams, of counsel for plaintiff, who was examined as an expert as to these two interlineations, first pronounced them to be in the handwriting of Mr. N. E. Jordan, but a further examination of them after leaving the witness stand, led him to the opinion that such was not the case, and he voluntarily so in *233 formed the court, and that he then thought that they were in the handwriting of Mr. Newell. This Newell denies, and on an examination of the papers, and the other evidence, we are satisfied that he did not write either of them.
4. There is no evidence that Newell knew, or had any reason to believe, when he signed the papers, that-any change had heen made in the agreement, after it was signed at Indianapolis, or until it was discovered at the former trial, and he swears expressly that he did not. The papers were signed by him and Dumont at Cincinnati, May 13, 1876. Dumont however testifies' that these interlineations were made after they were signed by him and Newell in Cincinnati — but this, we think, is utterly without foundation. Both of the copies of the agreement (signed in duplicate) are in Dumont’s handwriting, except a part of the interlineations made by Mr. Jordan. And the evidence is, that one copy was kept by Mr. Newell and one by Dumont, and that the language, including the words interlineated, were precisely the same in each. And they are now, as we find, precisely as they were when signed by Dumont and Newell.
5. It is clearly shown that $3,000, the cash payment, was made by, Newell to Dumont, and that he was authorized to receive it — that a small part of it was paid by Dumont to the plaintiff, and a large part of it applied to the improvement of the farm. Newell also paid the liens on the lands, and the residue of the $10,000, as stipulated in the contract, no part of which, principal or interest has ever been repaid. The fact 'that plaintiff got but a small amount of the money for his own use, or was not allowed by Dumont to assist in the management of the farm under the lease, was not the fault of Newell, and was legally a matter of no concern to him. But if it were otherwise, it clearly appears that ten days after this transaction, Hayes by a deed of warranty, conveyed the other one half of the property to his mother in fee-simple, and on the face of the title papers, after this, had no manner of interest in the land.
The question then is, on these facts as we find them, what are the rights of Hayes and Newell ?
*234 If it be conceded, (and this I think must be done), that this alteration is a material one, and which, if made under certain circumstances, would wholly avoid the contract, and prevent a recovery upon it by Newell if done by him, or with his concurrence — is such the fact here?
The law of Ohio as to the effect of the alteration of written instruments, is quite definitely settled by the decisions of our supreme court. To render a written instrument void on account of an alteration, it must appear :
1. That it is of a material part of the instrument.
2. That it was made by the plaintiff, or t'he party seeking to enforce it, and not by a stranger, and intentionally, and not by accident or mistake, and that it be done without the consent, express or implied, of those who set up the alteration as a defense.
. 3. That it be done, after the execution and delivery of the instrument and after it has taken effect. Fullerton v. Sturges, 4 Ohio St., 530.
If the concurrence of all these be essential to avoid a written instrument, on the ground that it has been altered, it would seem clear on the facts as we have found them, that the doctrine in question has no application whatever to this case.
In the first place the alterations here, were not made by Newell who is seeking to enforce it, or with his knowledge or consent; but rather by the attorney and agent of those who are now seeking to have it declared void ; and this, too, when they have received the full consideration from the innocent party, who has fully complied with the agreement on his part.
In the second place it was made by mistake and in entire good faith.
And third, it was altered before the instrument took effect, or was executed by Newell and Dumont. The idea, that under such circumstances, it should be held wholly invalid as to Newell, who acted in good faith in the whole matter, and advanced this large sum of money which went to the benefit of those seeking to avoid it, would be, as we think, in violation of every principle of law and of justice.
But the question remains, what is the effect of the alteration made under the circumstances we have stated? Manifestly a *235 person who signs a written instrument, which is afterwards altered, either fraudulently or by mistake, without his authority, is not bound by the instrument as thus altered. He has a right to say, this is not the contract which I made. Thus, if he has given his note for $1,000; and delivers it to another to have discounted for him, and he alters it to a note for $2,000, and transfers it to a third person who in good faith pays him the $2,000, and he delivers but the $1,000 to the maker of the note, if there has been no negligence on the part of the maker, he can not be he held for the $2,000; but a recovery may be had upon it as a note for $1,000.
This doctrine is expressly laid down, as we understand it, in the leading case in Ohio on this subject, to which we have before referred. 4 Ohio St., 535.
That was an action brought by Sturges against Fullerton and others to recover the amount claimed to. be due on a written instrument set out in his petition. It appeared that the principal, Culbertson, with the other defendants, as his sureties, had signed a note, in blank as to the amount and date, and to the signatures of which no seals were attached. This instrument was entrusted to Culbertson to be discounted for his'benefit. He, without the authority of the other signers, attached seals to their signatures and took it to Sturges, who without any knowledge of the alteration, filled in the date, and the blank as to the amount, making it for $10,000, as he had a right to do, and paid Culbertson that sum therefor. The sureties sought to be released from the payment of the note, on the ground that it had been altered m a material part by the addition of the seals to their names after they signed it, but judgment was rendered against them in the common pleas for the full amount of the loan, on the instrument as an unsealed note.
The supreme court, on a petition in error, filed to reverse the judgment (Judge Ranney delivering a very able opinion), held that the judgment was right — that the makers of an instrument, altered in a material part, without their consent, after its execution and before delivery to the payee, and without his knowledge, would not be bound by such instrument in its altered condition; but that they were bound, and that *236 recovery could be had upon it, as it was when executed by them This seems to us decisive of the question under consideration. The plaintiff in this case executed the deed in question precisely as it now stands, ánd the contract for the lease, as one to himself and his mother. They received the full consideration of $10,000 — and the fact that the contract was altered after they signed it, so as to make Dumont a lessee and joint contractor with them, in the manner stated, did not operate to discharge them from liability as to Newell. As against them, the alteration was a nullity, and could not be enforced — they could-successfully have resisted any claim of Dumont to any interest under it as a lessee with them; but the remainder of the contract was binding upon them.
Alfred Yaple and Wm. G. Williams, for plaintiff.
Jordan & Jordan, for defendant Newell.
We see nothing in. the cases cited by the counsel for plaintiff (15 Ohio, 507, and 15 Ohio St., 473) in conflict with this bolding, or with that in Fullerton v. Sturges, 4 Ohio St., 535.
They simply hold, that where a bond under seal, which, however, contains no penal sum, but is blank as to amount, when signed by sureties, is afterwards, in good faith, filled in with a certain sum, in pursuance of parol authority, (which authority was not sufficient), that there can be no recovery on such instrument. Of course not, for when the unauthorized addition is taken away, nothing whatever remains to justify a recovery for any sum. But if it had been filled, say with $10,000, when- signed, and afterwards in good faith altered to $20,000, there is nothing in those cases in opposition to the right to recover upon the bond as it was when signed.
Our judgment then is, that Newell is entitled to enforce his mortgage claim for the full amount advanced by him, with interest at the rate of 6 per cent, from the time the several sums were so advanced.